RENDERED: JULY 17, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0569-MR

TAYNANDREE REED                                                          APPELLANT

APPEAL FROM HARDIN CIRCUIT COURT
v.          HONORABLE LARRY ASHLOCK, JUDGE
ACTION NO. 20-CR-00434

COMMONWEALTH OF KENTUCKY                                    APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, ECKERLE, AND TAYLOR, JUDGES.

ECKERLE, JUDGE: Appellant, Taynandree Reed ("Reed"), *pro se*, seeks review

of the Hardin Circuit Court's March 10, 2025, Order denying his motions to vacate

his sentence, appoint counsel, and hold an evidentiary hearing pursuant to

Kentucky Rule of Criminal Procedure ("RCr") 11.42. After careful review of the

record and applicable law and finding no basis for relief, we affirm.

## I.     Factual and Procedural Background

On February 2, 2022, a Hardin County jury convicted Reed for the murder of Shawn Fox and Michael Buckner Thomas and the first-degree assault of Kenia Thomas. Consistent with the jury's recommendation, the Trial Court sentenced Reed to 70 years in prison. Reed appealed as a matter of right to this Court, and we affirmed. Upon discretionary review, the Kentucky Supreme Court also affirmed his conviction. *Reed v. Commonwealth*, No. 2022-SC-0152-MR, 2023 WL 5444420, at *1 (Ky. Aug. 24, 2023).

Reed's claims are, at least in part, an attempt to recycle arguments that have previously failed on direct appeal. Therefore, we restate the pertinent facts previously reviewed by the Court:[1]

> On May 13, 2020, Shawn Fox (Shawn), his girlfriend Kenia Thomas (Kenia), and his friend Michael Buckner Thomas (Michael) drove from Henderson, Kentucky to Elizabethtown, Kentucky to meet with Taynandree Reed (Reed) who was coming to Elizabethtown from Lexington, Kentucky. Shawn had set up this meeting with Reed in order to look at and potentially purchase a used car from Reed. During the drive to Elizabethtown, Michael became nervous, and Kenia gave him her gun, in an attempt to, she said, provide him with some peace of mind. When Shawn, Kenia, and Michael arrived at the Green Hill Apartment complex, the previously agreed-upon meeting location, Reed was already there.

---

[1] Following the opinion of the Kentucky Supreme Court, we use first names to identify Shawn Fox ("Shawn"), Kenia Thomas ("Kenia"), and Michael Buckner Thomas ("Michael") to avoid confusion because of the similarity of the last names of Kenia Thomas and Michael Buckner Thomas.

Unbeknownst to the threesome but as evidenced by cell phone location data, as well as surveillance video from the apartment complex and area businesses, Reed had been in the area for over forty-five minutes, both walking around and driving his mother's car. Prior to meeting with the three, Reed parked his mother's car approximately a block away from the apartment complex.

Upon arriving at the apartment complex, Shawn exited the car and spoke to Reed. The topic of this conversation is unknown. Shawn and Reed then both got into the car. At this point, Kenia was in the front driver's seat; Shawn was in the front passenger seat; Michael was in the back seat on the driver's side; and Reed was in the back seat on the passenger side. Reed told the others that they needed to wait for his girlfriend to get there because she had the car they were interested in purchasing.

After approximately thirty to forty minutes, Shawn left the car to use the restroom. Upon his return, Kenia began to complain that she was hungry and tired of waiting. About fifteen minutes after Shawn returned and as Shawn and Kenia discussed where to get food, Reed stated that he needed to use the restroom as well. He exited the car and was gone for a couple of minutes. When Reed returned to the car, he opened the back passenger side door. He immediately shot Michael in the head. He then shot Shawn twice—once in the neck and once in the head. As he turned to shoot Kenia, Kenia "scrunched up" her shoulders, causing the bullet to strike her shoulder before ricocheting up, going through her ear, and hitting her head. Kenia was rendered unconscious. Reed remained at the car for several minutes and eventually fled with Kenia's purse and cell phone and one of Shawn's two cell phones.

When Kenia awakened, she was unable to move her legs. She looked around the car but could not find her phone to call for help. She then used her hands to pick up her legs,

placing one on the brake pedal and one on the accelerator. She began driving and honking her horn until she found a driveway that she thought would provide safety. She pulled into that driveway, continuing to honk her horn. The resident of that house went outside, immediately saw blood and knew something was wrong. His wife called 911. The first responder on the scene was a police officer who could not detect any signs of life on either Shawn or Michael. He rendered aid to Kenia until medical personnel arrived. While moving Kenia's hair to attempt to find the wound causing her to bleed, a bullet fell from her head. Kenia was brought to the hospital and released the next day.

Police immediately began investigating the shooting. They found a bag with $9,000 in cash in the front passenger floorboard near Shawn's feet, which had apparently fallen out of his pants when Kenia drove over a curb after the shooting. They also found Kenia's gun on the back driver's side floorboard. Police obtained surveillance video from the Green Hill Apartment complex and identified the person they believed was the suspect. Police then ran a still photo of that person from the surveillance video through facial recognition software. They received three potential matches, one of which was Reed. By this time, they had already received Shawn's cell phone records. Thereafter, they determined that Reed was the last person that Shawn had contacted on his cell phone.

The police then obtained location data for the cell phones belonging to Kenia, Shawn, and Reed. This location data showed that the three phones were together in the area of the Green Hill Apartments at the time of the shooting. Shortly thereafter, they travelled together along the Bluegrass Parkway towards Lexington. Kenia's phone stopped pinging cell towers around mile marker 7 on the Bluegrass Parkway. Shawn's phone stopped pinging around mile marker 19, and Reed's phone continued to Lexington. Kenia's and Shawn's phones were never

recovered.  Kenia's purse, however, was found with blood on it, a short distance from the Green Hill Apartments.

Just over a week later, Reed was arrested at a Kroger in Versailles, Kentucky.

*Reed*, 2023 WL 5444420, at *1–2.  At trial, the jury considered approximately 80 exhibits, including surveillance videos from the area of the crime, photos of the scene, cell phone records, autopsy results, and other forensic evidence.  The jury also considered the testimony of over 15 witnesses, including Kenia, the surviving victim; other eyewitnesses to the scene; detectives with the Elizabethtown Police Department and other law enforcement officials; Dr. Laura Lippincott ("Lippincott"), the medical examiner; and Lawrence Pilcher ("Pilcher"), a ballistics expert.  One witness, Rachel Pelston ("Pelston"), whom both the Commonwealth and defense intended to call, was unavailable due to health concerns.[2]  By agreement of counsel, the Trial Court admitted and published to the jury Pelston's recorded statement taken by the Elizabethtown Police Department.  Video Record ("V.R."), 2/2/2022 at 9:20-38.

On direct appeal, Reed asserted three claims of error:  (1) "that the Commonwealth's Attorney committed prosecutorial misconduct when he repeated

_____

[2] The Commonwealth reported to the Trial Court that Pelston was in the last few months of a pregnancy and, due to her conditions and concerns over COVID-19, was excused from appearing.  V.R., 1/24/2022 at 9:02; 2/2/2022 at 9:20-38.

allegations of robbery, a crime on which Reed was not indicted, throughout his opening statement and closing argument"; (2) "that he was entitled to a jury instruction on self-defense"; and (3) "that the [Trial Court] erred in admitting re-call testimony from [the] Commonwealth's expert witness [Pilcher], as it was confusing and prejudicial." *Reed*, 2023 WL 5444420, at *2. The Kentucky Supreme Court held that the Assistant Commonwealth's Attorney's comments in his opening and closing arguments that Reed committed a robbery were reasonably supported by the evidence and not unduly prejudicial. *Id.* at *5. That Court declined to review for palpable error Reed's claim that the Trial Court should have instructed the jury on self-defense. Because Reed's counsel "never specifically requested a self-defense instruction or even implied that he wanted the jury to be instructed on self-defense," the Supreme Court held that the issue was not preserved under RCr 9.54(2). *Id.* Finally, that Court held the Trial Court did not abuse its discretion when it permitted the Commonwealth to re-call its ballistics expert or by admitting the expert's additional testimony. *Id.* at *6.

On August 23, 2024, pursuant to RCr 11.42, Reed, *pro se*, filed motions seeking to vacate his final judgment and sentence, requesting an evidentiary hearing, and asking the Trial Court to appoint a public defender. Record ("R.") at 221-47. In his RCr 11.42 motion and supporting memorandum, Reed claimed that he had been denied effective assistance of counsel, thereby

-6-

violating his constitutional right to a fundamentally fair legal proceeding. R. at 249-75. Reed asserted that his counsel had failed to represent his innocence to the jury adequately, and contrary to that duty, affirmatively represented to the jury that he was guilty of the alleged crimes. Additionally, Reed alleged that his counsel had failed to obtain or evaluate sufficiently his indictment by the Hardin County Grand Jury, including testimony presented regarding surveillance video. Further, he alleged that his trial counsel had failed to cross-examine or impeach witnesses effectively and had failed to request the suppression of evidence. In his motion and memorandum, Reed did not cite to the written or video record in support of any of his allegations.

By Order dated March 10, 2025, the Trial Court found that Reed did not specify grounds for his RCr 11.42 motion that were not disproven by the record and, thus, an evidentiary hearing and appointment of counsel were not warranted. Based on RCr 11.42 and citing *Fraser v. Commonwealth*, the Trial Court denied Reed's motion to vacate. 59 S.W.3d 448 (Ky. 2001).

On appeal, Reed argues that the Trial Court erred by denying his motion and asserts multiple claims of ineffective assistance of counsel, as well as separate allegations of errors during his jury trial. In some instances, he cites to the video record. Reed requests that we reverse and remand the Trial Court's Order denying him relief under RCr 11.42 with instructions to appoint counsel, allow him

to supplement his RCr 11.42 motion, and conduct an evidentiary hearing. The Commonwealth asks us to affirm the Trial Court's Order, asserting that the Trial Court properly denied RCr 11.42 relief because Reed's claims are without specificity or merit and are refuted by the record.

**II.      Kentucky Rule of Appellate Procedure ("RAP") 32 and Preservation**

Before proceeding to the merits, we consider the Commonwealth's request that we dismiss this appeal based on Reed's failure to comply substantially with our RAP 32(A). The Commonwealth argues that Reed failed to state specifically and adequately the manner and location that he preserved any of his arguments before the Trial Court. Moreover, it claims that as "many of Reed's appellate arguments were not presented to, or differ from, the arguments he made to the [Trial Court,]" they are not preserved for appeal. Appellee's Brief at 7.

Pursuant to RAP 32(A)(3), an appellant's opening brief shall contain "a summary of the facts and procedural events relevant and necessary to an understanding of the issues presented by the appeal, with ample references to the specific location in the record supporting each of the statements contained in the summary." Similarly, an appellant's argument section must also include "ample references to the specific location in the record and citations of authority pertinent to each issue of law." RAP 32(A)(4). A failure of a party to comply substantially with the RAPs is grounds for sanctions as this Court deems appropriate, which

may include striking the party's brief or dismissing the appeal. RAP 10(B)(3), (5). "While *pro se* litigants are sometimes held to less stringent standards than lawyers in drafting formal pleadings, Kentucky Courts still require *pro se* litigants to follow the [RAP]." *Prescott v. Commonwealth*, 572 S.W.3d 913 (Ky. 2019) (internal quotation marks and citations omitted); *see also Hallis v. Hallis*, 328 S.W.3d 694, 697-98 (Ky. App. 2010). Moreover, "the judiciary's conciliatory attitude toward unrepresented parties is not boundless." *Cardwell v. Commonwealth*, 354 S.W.3d 582, 585 (Ky. 2011).

In violation of RAP 32(A), Reed's opening brief does not contain an adequate summary of the factual and procedural events, does not offer ample citations to the Trial Record and lacks any preservation statements. Reed does supply some pinpoint citations to the video record, which allegedly support the arguments he advances before this Court. However, our review of the portions cited suggests that Reed has either misapprehended or patently mischaracterized the events that actually occurred.

For example, citing the V.R. from February 2, 2022, Reed states that his counsel "failed to adequately represent his innocence to the jury, and in fact, affirmatively represented to the jury . . . that [Reed] was guilty of the alleged crimes." Appellant's Brief at 4. However, the portion of the V.R. Reed cites actually references closing arguments during which Reed's counsel questioned the

credibility of the Commonwealth's witnesses and suggested their testimony was "rehearsed" and "tailored to a story." V.R., 2/2/2022 at 11:57:43-11:58:25. Contrary to Reed's claim, his counsel repeatedly addressed reasonable doubt and argued that "it wasn't [Reed]," that there "was adequate basis to believe that there was another person," that Reed was not the shooter, and that he was not guilty. V.R., 2/2/2022 at 12:07:50-12:09:23. Moreover, the record refutes Reed's shocking claims that his counsel called him "a salvage [sic]" and that "the Trial Judge even tells the jury you can see [Reed] opening the car door of the red car." Appellant's Brief at 5, V.R., 2/2/2022 at 11:17:56; and 6, V.R., 1/27/2022 at 4:23:49, respectively. Our review of these citations and others in Reed's brief reveal that most do not depict the purported subject matter or do not exist.

Reed filed a reply brief that presented a factual summary, including citations to the record, thereby demonstrating some effort to comply with the RAPs. However, the reply brief did not correct his prior errors or cure his failure to identify the manner and location that he preserved his arguments. As we have stated before, "[i]t is not the responsibility of this Court to search the record to find support for [an appellant's] arguments or where they are preserved, assuming such exists." *Progressive Direct Ins. Co. v. Harston*, 661 S.W.3d 291, 296 (Ky. App. 2023). Nonetheless, in an effort to address Reed's claims and provide finality, we

proceed to review the merits of his appeal. Our leniency in the case *sub judice* shall not be used as precedent.

## III. Standard of Review

We review a Trial Court's denial of RCr 11.42 relief for abuse of discretion. *Prescott*, 572 S.W.3d at 920. In the matter before us, the Trial Court denied Reed's RCr 11.42 motion without conducting an evidentiary hearing, the absence of which limits our review to "whether the motion on its face states grounds that are not conclusively refuted by the record and which, if true, would invalidate the conviction [and sentence]." *Baze v. Commonwealth*, 23 S.W.3d 619, 622 (Ky. 2000), *overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky. 2009) (quoting *Lewis v. Commonwealth*, 411 S.W.2d 321 (Ky. 1967)). Finally, matters of law are reviewed *de novo*. *Phon v. Commonwealth*, 545 S.W.3d 284, 290 (Ky. 2018).

## IV. Analysis

### A. RCr 11.42 Procedure

RCr 11.42 sets out the procedure by which a Trial Court shall consider a motion to vacate, set aside, or correct a sentence by "collateral attack." RCr 11.42(1). First, a Trial Judge shall examine an RCr 11.42 motion "to see if it is properly signed and verified and whether it specifies grounds and supporting facts that, if true, would warrant relief." *Fraser*, 59 S.W.3d 448, 452 (citing RCr

-11-

11.42(2)). A motion that does not meet these basic requirements may be summarily dismissed. *Id.* (citing *Odewahn v. Ropke*, 385 S.W.2d 163, 164 (Ky. 1964)).

If the motion meets these threshold requirements and after the Commonwealth has filed its answer, the Trial Court "shall determine whether the allegations in the motion can be resolved on the face of the record, in which event an evidentiary hearing is not required." *Fraser*, 59 S.W.3d at 452; RCr 11.42(5). If an evidentiary hearing is not warranted, the Trial Court is not obliged to appoint *pro bono* counsel but may do so if it deems appropriate. *Id.* at 453.

In the matter *sub judice*, the Trial Court did not summarily dismiss Reed's motion but did find that his allegations of ineffective assistance of counsel and other errors were explicitly refuted by the record, thereby obviating the need for a hearing or the appointment of counsel. *See, e.g.*, *Commonwealth v. Searight*, 423 S.W.3d 226, 231 (Ky. 2014) (post-conviction movant alleging ineffective assistance of counsel not entitled to an evidentiary hearing where alleged deficiencies did not prejudice the defendant and a hearing to determine mere trial strategy would be pointless).[3]

_____

[3] "Searight's RCr 11.42 motion failed the *Strickland* test because he was not prejudiced as a result of any errors whether those errors amounted to deficient performance or not. . . . [I]f the trial court properly denied Searight's RCr 11.42 motion on prejudice grounds without a hearing, then the Court of Appeals erred in ordering a nugatory hearing to determine trial strategy." *Id.*

## B. Ineffective Assistance of Counsel

The bases for Reed's collateral attack following direct appeal are his allegations of ineffective assistance of counsel. Our Supreme Court has opined that "[i]t is not the purpose of RCr 11.42 to permit a convicted defendant to retry issues which could and should have been raised in the original proceeding, nor those that were raised in the trial court and upon an appeal considered by this [C]ourt." *Thacker v. Commonwealth*, 476 S.W.2d 838, 839 (Ky. 1972). However, in more recent jurisprudence, that Court has held that "the appellate resolution of an alleged direct error cannot serve as a procedural bar to a related claim of ineffective assistance of counsel." *Leonard*, 279 S.W.3d at 158 (citing *Martin v. Commonwealth*, 207 S.W.3d 1 (Ky. 2006)). As that Court explained, the *Martin* decision held that a defendant may present "ineffective assistance of counsel claims in the RCr 11.42 context even though the underlying claim of error had been denied on direct appeal." *Id.*

To establish a claim of ineffective assistance of counsel, a defendant must show that "counsel's performance was deficient and that said deficiency caused actual prejudice resulting in a fundamentally unfair proceeding with an unreliable result." *Prescott*, 572 S.W.3d at 920 (recognizing the principle to analyze ineffective assistance of counsel claims under the Sixth and Fourteenth Amendments as established by *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct.

-13-

2052, 80 L. Ed. 2d 674 (1984)). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *see also Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S. Ct. 838, 842, 122 L. Ed. 2d 180 (1993) (A criminal defendant alleging prejudice in an 11.42 motion must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.").

Even if his counsel's performance may be inadequate, a defendant must show a substantial likelihood that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. Mere speculation "that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a sufficient ground to prove ineffectiveness of counsel." *Prescott*, 572 S.W.3d at 920 (internal quotation marks and citations omitted). Rather, "the threshold issue is not whether [appellant]'s attorney was inadequate; rather, it is whether he was so manifestly ineffective that defeat was snatched from the hands of probable victory." *Cherry v. Commonwealth*, 545 S.W.3d 318, 323 (Ky. App. 2018) (quoting *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992)).

Under the high bar established by these principles, we now consider Reed's claims that he was denied effective assistance of counsel, that this

deficiency resulted in prejudice to the disposition of his case, and that the Trial Court abused its discretion when it denied his RCr 11.42 motion.

First, Reed alleges that his counsel failed to give an opening statement, failed to "represent his innocence to the jury" adequately, and made statements that constituted "improper evidence" necessitating a mistrial. Appellant's Brief at 4-5. Most significantly, Reed claims that his counsel "affirmatively represented to the jury in his trial that his client was guilty of the alleged crimes." Appellant's Brief at 2. These claims are unsupported by the record.

Although Reed possibly misunderstood the procedural option to reserve an opening statement until after the close of the Commonwealth's case, his counsel did in fact present an opening argument. V.R., 1/19/2022 at 2:13:30; 2/2/2022 at 9:10:50-9:17:18. Moreover, as the Trial Court observed, "Reed's counsel represent[ed] his innocence . . . many times in a variety of ways, including during his opening and closing statements [and] during his cross examination of witnesses. . . ." R. at 286. And Reed's counsel argued throughout the trial that the Commonwealth had not proven that Reed was the shooter – a theory described by the Trial Judge as "that's not him." V.R., 2/2/2022 at 10:43; *see also* R. at 286 (characterizing the defense strategy as "it wasn't me").

As such, Reed fails to "overcome the presumption that, under the circumstances, the challenged action[s] 'might be considered sound trial strategy.'" *Cherry*, 545 S.W.3d at 323 (quoting *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S. Ct. 158, 164, 100 L. Ed. 83 (1955))). Even if Reed was disappointed with his counsel's performance or disagreed with his counsel's defense strategy, his "[c]onjecture that a different strategy might have proved beneficial" is not sufficient to establish prejudice. *Prescott*, 572 S.W.3d at 921.

Second, Reed renews his claim that the prosecutor's references to "robbery" during his opening and closing arguments were clearly inadmissible and that his attorney's failure to object constituted ineffective assistance of counsel. This is an attempt to relitigate his claim of prosecutorial misconduct, soundly rejected by the Kentucky Supreme Court in this very case, which held that the Commonwealth's statements were relevant, supported by the evidence, and not unduly prejudicial. *Reed*, 2023 WL 5444420, at *2-3. In this light, Reed's defense counsel's failure to object cannot be discerned as unreasonable.

Third, Reed claims that his counsel mishandled the testimony of witnesses, including failing to cross-examine Pelston and several detectives. Regarding the admission of Pelston's statement, Reed directs his complaint at the Trial Court, claiming that it prevented him from calling Pelston to testify. Again,

-16-

Reed's claim falls outside the scope of RCr 11.42, as it could and should have been raised during his direct appeal. *Prescott*, 572 S.W.3d at 922. Additionally, Reed fails to demonstrate that his counsel's strategy to proceed with the trial, despite Pelston's unavailability, was derelict or caused any prejudice. In furtherance of presenting evidence that contradicted other eyewitnesses, Reed was permitted to offer Pelston's recorded statement and cross-examine the Commonwealth's other eyewitnesses and detectives concerning the identity of the shooter.

Reed's fourth claim is that his counsel "failed to set up a defense for less[er] included offenses." Appellant's Brief at 8. Within this assertion, he argues that his counsel improperly failed to vet his indictment or present proof of self-defense sufficient to seek a jury instruction of the same or of "complicity." *Id.* at 9. Yet again, his dispute with his counsel over his defense strategy does not demonstrate deficient performance or prejudice. Reed's own statements to law enforcement averred that he was not at the scene, did not know the parties, and was not involved. V.R., 1/31/22 at 1:43:00-2:00:00, 2:01:00-2:11:00. Throughout the trial, the defense theory was that, even if Reed was present in the area, he was not the shooter. Therefore, not only was an instruction of self-defense not supported by the evidence, but such an instruction would have undermined Reed's own assertion that he was not the shooter. A choice of one theory over another is a

matter of strategy that is presumed sound, unless proven to be objectively

unreasonable. *Cherry*, 545 S.W.3d at 323.

Fifth, Reed claims that his counsel failed to cross-examine, impeach,

or challenge adequately the Commonwealth's witnesses. However, the record

reflects that Reed's counsel conducted extensive cross-examination of the

witnesses and made reasonable evidentiary objections throughout the course of the

jury trial. Additionally, Reed suggests that his counsel should have challenged the

qualifications of the Commonwealth's expert witnesses pursuant to *Daubert v.*

*Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469

(1993). Again, counsel's inaction in this regard was not objectively unreasonable.

Moreover, the record clearly reveals that the Commonwealth established

foundational expertise for both its recognized experts,[4] including their education,

accreditation, and experience. V.R., 1/26/22 at 9:17-19; 1/31/22 at 9:54-10:00.

And Reed fails to show deficient representation or prejudice, as the record reflects

that his counsel conducted extensive cross-examination of both witnesses. V.R.,

1/26/22 at 10:46:30-11:43:50; 1/31/22 at 11:15:40-11:24:30, 1:05:05. Finally, we

---

[4] As the Commonwealth explains, the Kentucky Supreme Court has recognized the qualifications and expertise of both its experts. Appellee's Brief at 17 (citing *Daniel v. Commonwealth*, 607 S.W.3d 626, 631 (Ky. 2020) (describing Lippincott as "[a] medical examiner and forensic pathologist") and *Reed*, 2023 WL 5444420, at *5 (describing Pilcher as "a firearms and tool marks identification expert")).

will not consider Reed's substantive claim that either expert was unqualified, as it was unpreserved and should have been raised on direct appeal.

Next, Reed argues that he was "denied evidence prior to trial" but fails to present any cogent or supported basis for his claim. This appellate claim differs substantially from the alleged discovery violations that Reed presented to the Trial Court – allegations that the Court refuted after a thorough review of "all bench conferences and hearings." R. at 287. Reed also argues that his counsel failed to seek the suppression of "certain evidence," including photographic evidence from his phone, "which was [allegedly] taken without a warrant." Appellant's Brief at 14-15. Once again, this claim substantially differs from the argument that he presented to the Trial Court. Specifically, he asserted that the search warrant for his mother's home, not his phone, was inadequate. R. at 287. We will not consider for the first time on appeal an attack that was not presented to the Trial Court for a ruling. *Applegate v. Commonwealth*, 577 S.W.3d 83, 89-90 (Ky. App. 2018) ("Our jurisprudence will not permit an appellant to feed one kettle of fish to the trial judge and another to the appellate court.").

Reed's final argument, which he also raises for the first time, is that the Trial Court's jury selection violated RCr 9.30 to 9.40, including by having too many jurors; the Trial Court erred in excusing certain jurors; and his counsel failed to exercise his peremptory strikes. Reed's claims are wholly unpreserved, having

not been raised or addressed before the Trial Court, and without merit. The record demonstrates that both parties exercised peremptory strikes. V.R., 1/19/2022 at 3:03:45. Moreover, "[c]oncerns about the makeup of the jury are trial issues which should be raised on direct appeal and which are therefore not the proper basis of a collateral attack." *Knuckles v. Commonwealth*, 421 S.W.3d 399, 402 (Ky. App. 2014) (citing *Leonard*, 279 S.W.3d at 156).

## V.    Conclusion

In sum, Reed has failed to establish that he was denied effective assistance of counsel or that any such denial resulted in prejudice to the disposition of his case. As Reed's RCr 11.42 motion failed to state specific grounds for relief that were not conclusively refuted by the record, the Trial Court did not abuse its discretion by denying his motion. Therefore, we affirm the Order of the Hardin Circuit Court denying Reed's 11.42 motions to vacate his conviction, conduct an evidentiary hearing, and appoint counsel.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Taynandree Reed, *pro se*
LaGrange, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Joseph A. Beckett
Assistant Attorney General
Frankfort, Kentucky